EDMUND G. BROWN JR.
Attorney General of California
DANE R. GILLETTE
Chief Assistant Attorney General
GARY W. SCHONS
Senior Assistant Attorney General
KEVIN VIENNA
Supervising Deputy Attorney General
DAVID DELGADO-RUCCI
Deputy Attorney General
State Bar No. 149090
 110 West A Street, Suite 1100
 San Diego, CA 92101
 P.O. Box 85266
 San Diego, CA 92186-5266
 Telephone: (619) 645-2223
 Fax: (619) 645-2191
 E-mail: David.DelgadoRucci@doj.ca.gov
*Attorneys for Respondent*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| **JAMES DANIEL FUENTES,** | ED CV 09-01041 CJC (RZ) |
| Petitioner, | **RESPONDENT'S OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |
| v. | |
| **FERNANDO GONZALEZ, Warden,** | |
| Respondent. | |

COMES NOW RESPONDENT Fernando Gonzalez, Acting Warden, California Correctional Institution, Tehachapi, California, by and through counsel, Edmund G. Brown Jr., Attorney General for the State of California, and David Delgado-Rucci, Deputy Attorney General, and files this objection to the Report and Recommendation (R&R).

1

The R&R recommends that Petitioner James Daniel Fuentes ("Fuentes') be granted habeas relief because there is insufficient evidence to support his conviction for aiding and abetting a drive-by shooting. Respondent disagrees with the R&R.

The R&R incorrectly applies the appropriate standard of deference under 28 U.S.C. § 2254 by failing to give deference to facts, even if not affirmatively appearing in the record, that the trier of fact resolved in favor of the prosecution, and reevaluates the weight of the evidence by finding certain inferences to be weak, even though such evidence can support a conviction. Finally, the petition cannot be granted as the state courts' decision denying Fuentes' claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

The basic disagreement here is the rejection by this Court of *People v. Pitts*, 223 Cal. App. 3d 606, 273 Cal. Rptr. 757 (1990), and the factors which may be considered in determining intent for an aider and abettor. California permits consideration of a defendant's presence at the crime scene, failure to take steps to prevent the commission of the crime, companionship, and conduct before and after the crime. The R&R rejects *Pitts* (R&R at 21) and ignores evidence which the jury in the state trial was properly entitled to consider.

*Pitts* is a statement of common-sense factors which may be considered in guiding the trier of fact in making its determination of guilt. Under *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), *all* of the evidence is to be considered, and in the light most favorable to the prosecution. *Id.* at 319 (emphasis added). The reviewing court is obligated to respect the exclusive province of the fact finder to determine reasonable inferences from proven facts. *See United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996). Deference to the relevant state court factual findings is also required. *See Jeffries v. Wood*, 114 F.3d 1484, 1498 (9th Cir. 1997). *Juan H. v. Allen*, 408 F.3d 1262, 1274-75, n.8 (9th Cir. 2005), requires that deferential respect to the state court's findings be heightened.

1     Thus, when this Court disregards factors which were properly considered by
2 the state court in resolving this claim on direct appeal, it fails to give the
3 appropriate deference to the state court's factual findings.
4     California courts review claims of insufficient evidence using the standard
5 enunciated in *Jackson*. *See People v. Cuevas*, 12 Cal. 4th 252, 260-61, 48 Cal.
6 Rptr. 2d 135, 906 P. 2d 1290 (1995). Thus, when the state court resolved this claim
7 utilizing the permissible inferences explained by *Pitts*, it was doing so as a
8 reasonable application of *Jackson*. *Jackson* itself permits a trier of fact to draw
9 reasonable inferences from proven facts. While this Court may consider itself not
10 bound by *Pitts*, this would undermine the standard of deference required because
11 the jury was permitted to consider this evidence.
12     As an aider and abettor, the jury had to find that Fuentes acted with (1)
13 knowledge of the unlawful purpose of the perpetrator, (2) intent that the act be
14 committed be encouraging, or facilitating the commission of the offense, (3) and,
15 by act or advice aided, promoted, encouraged or instigated, the commission of the
16 crime. *People v. Marshall*, 15 Cal. 4th 1, 40, 61 Cal. Rptr. 2d 84, 931 P.2d
17 262(1997).
18     Here, the R&R states that Fuentes did not know of Reyes' plan to kill
19 Francisco. (R&R at 21-22.) The R&R states that the evidence does not support the
20 inference Fuentes knew Reyes was intending on killing Francisco. But this Court's
21 analysis on this point only states that Fuentes was in a car that had loaded firearms
22 inside. (R&R at 22.) This is not the proper method of evaluating the claim.
23     First, there is no specific evidence which is to be considered for only one part
24 of the requirements of the offenses. That is to say, the first element is not restricted
25 to Fuentes merely being in a car with loaded firearms. There is more than this that
26 was available to the trier of fact.
27     The jury heard testimony that Fuentes was a gang member in the same gang as
28 Reyes. Thus, this is not simply a matter of Fuentes not knowing what types of

1 offenses this gang member would be involved in.  First, the shooting of Francisco
2 was not an isolated incident.  Prior to this shooting, Reyes had been in an
3 altercation on July 2, 2002, with Ector Ferreira, Francisco's brother.  The shooting
4 occurred in an area of town where the West Side Verdugo gang was trying to
5 establish its turf.  (3 RT 620-623; 4 RT 928-929.)  During that incident, Reyes
6 shouted "West Side mother-fucker" and fired gunshots.  (3 RT 620-623, 659.)
7 Abraham Lopez, who had been riding his bicycle, and was the intended target, hid
8 behind a car as more shots were fired.  (3 RT 622.)  Lopez knew that the reference
9 was to a gang.  (3 RT 621.)  Ector, who heard the gunshots from across the street,
10 confronted Reyes, and said, referring to Lopez, "That's my friend."  (1 RT 201; 3
11 RT 543-545, 580, 599.)  Ector told appellant Reyes that he had messed up.  Ector
12 cursed at Reyes and said, "What you did was wrong.  I am going to come back."
13 Ector indicated that Lopez was like a brother to him, and said to Reyes, "You shoot
14 at him, shoot at me, too."  Reyes responded, "All right."  Then he shot Ector in the
15 face.  (3 RT 546.)  Ector was shot once, so was Lopez.  (3 RT 549.)
16     Thus, when Reyes and Fuentes returned to the same area on June 24, 2003, it
17 was not simply because of coincidence.  Given the fact that Fuentes admitted to
18 officers he had been part of the gang since he was eleven years old (3 RT 706-708),
19 it was very reasonable that Fuentes knew of the prior shooting involving Ector.
20     When Reyes and Fuentes appeared in the neighborhood, it was not
21 coincidence.  In fact, the expert had given testimony that this second incident was a
22 carryover from the 2002 shootings in the same area.  (4 RT 882, 904.)
23     Given that this was not an isolated incident, the jury could conclude that Reyes
24 intended on finishing something and that Fuentes, as a gang member, knew this.
25     Second, murder does not require a long involved plan.  Even for premeditated
26 and deliberate murder, the process does not require any extended period of time.
27 The true test is not the duration of time as much as it is the extent of the reflection.
28 Thoughts may follow each other with great rapidity and cold, calculated judgment

4

1   may be arrived at quickly.  *People v. Koontz*, 27 Cal. 4th 1041, 1080, 119 Cal.
2   Rptr. 2d 859, 46 P.3d 335 (2002).
3        Here, the evidence shows not that Reyes and Fuentes suddenly appeared and
4   began firing, but that Reyes, the driver, and Fuentes, first drove down the street.
5   Megan Kahookele, Francisco Ferreira's live-in girlfriend, noticed a burgundy
6   Thunderbird driving down the street.  (1 RT 53, 55.)  The car stopped.  Francisco
7   turned around and told Kahookele to call his brother, Ector.  Francisco sounded
8   concerned.  Just as Kahookele was calling for Ector, she heard the tires of the car
9   screech and saw that *it was coming back* toward the house.  (1 RT 56; emphasis
10  added.)   This evidence was also supported by the testimony of Maria de Jesus
11  Gonzalez de Medina, a neighbor, who saw a car driving in reverse at a high rate of
12  speed.  (1 RT 124.)
13       Short of Fuentes providing testimony that he knew Reyes was going to shoot,
14  and even kill someone, the jury was entitled to consider this evidence in making its
15  determination that by being involved in a prior incident in which Reyes shot
16  someone, returning to the same area to finish the situation, driving by first and then
17  returning and firing shots, Fuentes, a gang member as was Reyes, knew this was
18  not going to be a friendly encounter.  And this gang was known for engaging in
19  homicides.  (R&R at 11, citing Court of appeal opinion.)
20       Further, the gang expert testified that it would have been disrespectful for
21  Reyes to commit the shooting without Fuentes' knowledge.  (R&R at 13, citing
22  Court of Appeal opinion).
23       Thus, the R&R's conclusion that no reasonable jury could have concluded that
24  Fuentes knew Reyes was going to commit murder, fails to give proper deference to
25  the state court's resolution of the issue because it fails to include all of the evidence
26  and the inferences which bear upon this element.
27       Additionally, this Court states that the expert himself allowed that Fuentes
28  may not have known about Reyes' plan.  (R&R at 22.)  That is true but that is

1  because had the expert given such testimony that Fuentes knew of Reyes' plan, he
2  would have been testifying as to an ultimate issue for the jury to decide.  It would
3  have been improper for the expert to give such testimony because the expert could
4  not possibly say with certainty that Fuentes knew of this plan.  *People v. Gonzalez*,
5  38 Cal. 4th 932, 946, 44 Cal. Rptr. 3d 237, 135 P.3d 649 (2006), explained that the
6  decision in *People v. Killebrew*, 103 Cal. App. 4th 644, 657, 126 Cal. Rptr. 2d 876
7  (2002), prohibited an expert from testifying to his or her opinion of the knowledge
8  or intent of a defendant on trial.  Thus, that the expert in this case left the possibility
9  that Fuentes did not know of Reyes' plan is not a basis for finding the decision to
10 be unreasonable.

11 Further, the R&R's reading of the Court of Appeal's decision that Fuentes
12 "surely could anticipate that this could mean trouble," when he accompanied Reyes,
13 and that Fuentes was not charged with accompanying someone to cause trouble
14 (R&R at 22), is a misreading of the Court of appeal's opinion and the language
15 used by the court.

16 The Court of Appeal's statement was the last sentence of a paragragh
17 describing all of the evidence that supported the aiding and abetting charge,
18 specifically regarding Fuente's intent. (Lod. 5 at 25.)  The full statement by the
19 Court of Appeal is as follows:

20      We find ample evidence supporting that Fuentes intended to aid and
21      abet the coldblooded murder of Francisco. There is no dispute that
22      Fuentes was present during the shooting. Furthermore, he made no
23      attempt to stop the shooting and in fact facilitated the shooting by leaning
24      back to give Reyes a clear shot.  Although Fuentes characterizes this
25      action as his attempt to merely get out of the way of the gun, we believe
26      this evidence, combined with other evidence presented, was a strong
27      indication of Fuentes's intent to aid and abet the murder.
28      This additional evidence included that defendants were fellow gang

6

1 members who spent time together.  Prior to the crime, defendants had
2 driven together to the Rojas residence and asked to speak with Martin.
3 They then drove by Francisco, backed up, and shot him several times.
4 Based on the eyewitness testimony, Reyes reached down to his lap prior
5 to the shooting and grabbed the gun . Fuentes willingly accompanied
6 Reyes, a fellow gang member, in his car in which a loaded firearm was
7 located in the front seat area. Fuentes surely could anticipate that this
8 could mean trouble.

9 The Court of Appeal then goes on to explain that the actions occurring after
10 the shooting supported this element.  The R&R's use of one sentence to argue there
11 was no intent simply misreads the Court of Appeal's opinion.  The phrase was a
12 general one, not one intended to show that trouble was the only thing Fuentes
13 should have foreseen.

14 In sum, the R&R fails to give the required deference to the state's resolution
15 of this claim and should be reversed.  *Juan H*.

16 The R&R also finds insufficient evidence as to the two remaining elements of
17 specific intent and affirmative action by Fuentes.  The R&R states that the central
18 evidence for both elements was the testimony that Fuentes leaned back in the
19 vehicle at the moment Reyes reached across to shoot.  The R&R states this is too
20 insubstantial and proceeds to replace the decision of the trier of fact with its own
21 belief as to what this evidence means.

22 The R&R cites to Kahookele's testimony that she saw the passenger lean back
23 at the time of the shooting.  (R&R at 22.)  The R&R then states that a passenger
24 leaning back may have done so to avoid harm to himself, or acted on reflex without
25 any bearing on which direction he was going or why he was leaning back.  (R&R at
26 23.)  With all due respect, this is simply wrong.  First, this was a matter within the
27 exclusive province of the jury.  As the R&R's own analysis on this points shows,
28 different minds will view the evidence differently.  Either Fuentes leaned back to

1  get out of the way to permit a better shot, or he did so simply to avoid harm
2  himself. But those two inferences are what the jury is to decide. And on federal
3  habeas, under *Jackson*, the evidence is to be considered in the light most favorable
4  to the prosecution. *Jackson*, 443 U.S. at 319. Thus, the inference being drawn by
5  the R&R is contrary to *Jackson* and fails to give proper deference to the state court
6  resolution of this claim and to the jury who was to decide what this evidence meant.

7  The R&R next points to the testimony of Maria Medina who testified that
8  Fuentes leaned back. The R&R then analyzes the trial court's comment that the
9  witness moved "decidedly" to the back of the chair, and that it is impossible to
10 evaluate or re-evaluate this point on habeas. The R&R acknowledged that this
11 leaning could support the prosecution but that it was not argued by the prosecution
12 nor mentioned by the Court of Appeal. (R&R at 23-24.)

13 But the very act by the R&R of acknowledging that this was a possibility
14 means that the R&R is required to give deference to the state court's decision
15 because this evidence supports that decision. As stated above, the evidence is to be
16 considered in the light most favorable to the prosecution. Just because it is not
17 argued by the prosecution or mentioned by the Court of Appeal does not mean it is
18 disregarded. It is still evidence in the record and is still entitled to deference.

19 Again returning to the case of *Pitts*, the R&R chooses not to utilize evidence
20 post-shooting because it believes it is not bound to follow *Pitts*. But as Respondent
21 has argued, *Pitts* is simply a common- sense statement of what circumstantial
22 evidence may be utilized by the trier of fact in rendering a decision. *Jackson*
23 permits evaluation of both direct and circumstantial evidence. Post shooting
24 evidence is circumstantial evidence which a jury may use. This is in conformity
25 with *Jackson*. The use of such evidence is not contrary to *Jackson* nor an
26 unreasonable application of *Jackson*.

27 It appears that the R&R requires more affirmative action on the part of Fuentes
28 in order for there to be sufficient evidence. Respondent states this because the

8

1  R&R characterizes Fuentes' movement as passive actions, such as failing to
2  repudiate Reyes' actions. (R&R at 24.) But this not merely passive action on
3  Fuentes' part, particularly where the jury also heard evidence of how gangs operate.
4  Post-shooting evidence of an active kind included the continued correspondence
5  between Fuentes and Reyes. (3 RT 739-743.) This must be put into context. The
6  gang expert testified that both the driver and the passenger gain status by
7  conducting a drive-by shooting, as gang members have a "mentality of all for one,
8  one for all." (4 RT 883.) Further, the exchange of letters, an active act on
9  Fuentes's part, indicated they were in good standing with the gang and were
10 working together. (4 RT 954.)

11     While it is possible to view pieces of the evidence individually and attempt to
12 discount their overall value, that is not what *Jackson* requires or permits. The
13 standard requires all of the evidence is to be considered, and in the light most
14 favorable to the prosecution. *Jackson*, 443 U.S. at 319.

15     Respondent therefore objects to the R&R and requests this Court reject the
16 recommendation and deny the Petition for Writ of Habeas Corpus.

17 Dated: October 7, 2009                         Respectfully submitted,

                                                 EDMUND G. BROWN JR.
                                                 Attorney General of California
                                                 DANE R. GILLETTE
                                                 Chief Assistant Attorney General
                                                 GARY W. SCHONS
                                                 Senior Assistant Attorney General
                                                 KEVIN VIENNA
                                                 Supervising Deputy Attorney General


                                                 /s/ David Delgado-Rucci
                                                 DAVID DELGADO-RUCCI
                                                 Deputy Attorney General
                                                 *Attorneys for Respondent*

SD2009701995
80393712.doc

9

# CERTIFICATE OF SERVICE

Case Name: <u>**Fuentes v. Gonzalez**</u>    No. <u>**ED CV 09-01041 CJC (RZ)**</u>

I hereby certify that on <u>October 7, 2009</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**RESPONDENT'S OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>October 7, 2009</u>, at San Diego, California.

<br>

| Cathey Pryor | *Cathey Pryor* (signature) |
|---|---|
| Declarant | Signature |

80393735.doc