SEAN K. KENNEDY (No. 145632)
Federal Public Defender
(E-mail: Sean_Kennedy@fd.org)
GIA KIM (No. 237326)
Deputy Federal Public Defender
(E-mail: Gia_Kim@fd.org)
321 East 2nd Street
Los Angeles, California  90012-4202
Telephone (213) 894-4408
Facsimile (213) 894-0081

Attorneys for Petitioner
JAMES DANIEL FUENTES

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JAMES DANIEL FUENTES,<br><br>    Petitioner,<br><br>v.<br><br>FERNANDO GONZALES, Warden,<br><br>    Respondent. | NO. ED CV 09-1041-CJC (RZ)<br><br>**Petitioner's Opposition to Continued Stay Pending Appeal; Memorandum of Points and Authorities; Declaration of Tonja Anderson-Vargas** |

      Petitioner James Daniel Fuentes, by Deputy Federal Public Defender Gia Kim, files his opposition to a continued stay of this Court's order that Mr. Fuentes be released.  This opposition is based on the attached memorandum of points and authorities and declaration of Tonja Anderson-Vargas; all files, records, and lodgments in this case; and any other evidence and argument as may be provided to the Court.

                                            Respectfully submitted,

                                            SEAN K. KENNEDY
                                            Federal Public Defender

DATED: January 8, 2010        By_____/s/_____
                                            GIA KIM
                                            Deputy Federal Public Defender

**Memorandum of Points and Authorities**

**Introduction**

On June 2, 2009, petitioner James Fuentes filed a habeas petition pursuant to 28 U.S.C. § 2254, arguing that the evidence was insufficient to support his conviction for murder under an aiding and abetting theory. (Docket No. 1.) On October 1, 2009, the Honorable Magistrate Judge Ralph Zarefsky issued a Report and Recommendation recommending that the petition be granted. (Docket No. 10.) On October 16, 2009, this Court accepted the Report and Recommendation of the Magistrate Judge and ordered Mr. Fuentes "released from custody, to the extent he is confined solely on the basis of the conviction in this case." (Docket Nos. 14, 15.) Although a notice of appeal has been filed by Respondent in this case (Docket No. 17), this Court retains jurisdiction over issues pertaining to Mr. Fuentes's custody, *see Stein v. Wood*, 127 F.3d 1187, 1190 (9th Cir. 1997), and should deny Respondent's application for a stay during the pendency of the appeal.

**Legal Standard**

Federal Rule of Appellate Procedure 23(c) provides that "[w]hile a decision ordering the release of a prisoner is under review, the prisoner must -- unless the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court orders otherwise -- be released on personal recognizance, with or without surety." Fed. R. App. P. 23(c). The Supreme Court has explained that "Rule 23(c) undoubtedly creates a presumption of release from custody" pending appeal in cases where the district court has granted relief to a habeas petitioner. *Hilton v. Braunskill*, 481 U.S. 770, 774, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987). Whether a stay is appropriate depends on the following factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton*, 481 U.S. at 776; *see also*

*Nken v. Holder*, 129 S. Ct. 1749, 1756, 1760-61, 173 L. Ed. 2d 550 (2009) (endorsing *Hilton*'s "traditional" stay factors)  The party seeking a stay bears the burden of showing that a stay is justified under the circumstances. *Id.* at 1761.

Further, the Supreme Court has recently reaffirmed that stays pending appeal should not be granted "reflexively." *Nken*, 129 S. Ct. at 1757.  Rather, a stay is an "intrusion into the ordinary processes of administration and judicial review," and therefore "is not a matter of right, even if irreparable injury might otherwise occur to the appellant." *Id.* at 1757 (citations and internal quotation marks omitted).

**Argument**

**I.     Respondent Has Not Overcome the Presumption that Mr. Fuentes Should Be Released from Custody Pending Appeal.**

　　A.     *Respondent Has Not Made the Required Strong Showing of a Likelihood of Success on Appeal.*

Respondent has not satisfied his burden under *Hilton* to make a strong showing of likelihood of success on the merits.  A showing of a likelihood of success on the merits is "the threshold for a stay pending appeal." *Humane Soc'y of the United States v. Gutierrez*, 558 F.3d 896, 897 (9th Cir. 2009) (order) (denying stay of administrative action pending appeal).  The boilerplate assertions in Respondent's request for a stay pending appeal (Docket No. 16), do not come close to meeting this demanding standard.

Respondent's sole arguments in favor of likelihood of success on the merits are unavailing.  First, Respondent argues that he is likely to prevail "when the appropriate level of deference is given to the state court findings."  Request for Stay Pending Appeal, Docket No. 16, at 2.  Contrary to Respondent's suggestion, this Court already applied the proper level of deference to the state court decision under review.  The Magistrate Judge's Report and Recommendation, which was adopted by this Court, clearly sets forth the standard of review for Section 2254 petitions under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the standard for sufficiency of the evidence claims under *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), and the

1  "additional layer of deference," or "double deference," required when assessing
2  sufficiency of the evidence claims under AEDPA.  *See* Report and Recommendation,
3  Docket No.10 at 2, 16, 21, 24.  The Report and Recommendation cites a Ninth Circuit
4  case, *Juan H. v. Allen*, 408 F.3d 1262 (9th Cir. 2005), for the applicable level of
5  deference in a post-AEDPA case involving an allegedly unreasonable application of
6  *Jackson v. Virginia*.  *See* Report and Recommendation, Docket No. 10 at 16, 21.  Because
7  this Court's decision thus faithfully follows Ninth Circuit precedent on the required level
8  of deference, it is unlikely that Respondent will prevail on this ground.  *See* Order
9  Denying Respondent's Application for Stay Pending Appeal at 4, Docket No. 102,
10 *Madriaga v. Salazar*, CV 01-1970-SVW (RNB) (C.D. Cal.) ("[W]hile AEDPA
11 establishes an extremely deferential standard, the application of this standard does not
12 guarantee that Respondent is likely to succeed on appeal -- this Court has already granted
13 the writ applying the same standard.")

14      Second, Respondent points out that the state court judges who ruled on Mr.
15 Fuentes' case came to a different conclusion than the magistrate judge and this Court.
16 *See* Request for Stay Pending Appeal, Docket No. 16, at 2.  But Respondent does not
17 explain how the mere fact of state-court disagreement makes reversal in the Ninth Circuit
18 likely.  Whether the California Court of Appeal's decision in Mr Fuentes' case was
19 objectively unreasonable is a federal question, *see Juan H.*, 408 F.3d at 1278 n.14, and
20 the state courts are no more competent to adjudicate this federal question than this Court
21 is.  As other federal district courts have reasoned, "[s]imply the fact that the state court
22 disagreed cannot itself be enough to satisfy this factor, however, because in every federal
23 habeas case the state court will have disagreed."  *Franklin v. Duncan*, 891 F. Supp. 516,
24 520 (N.D. Cal. 1995) (granting successful habeas petitioner's motion for release pending
25 appeal); *see also* Order Denying Respondent's Application for Stay Pending Appeal at
26 3, *Madriaga v. Salazar*, CV 01-1970-SVW (RNB) (C.D. Cal.) ("[I]f the Court accepted
27 Respondent's logic, a district court would be required to issue a stay every time it granted
28 the writ to a state prisoner because every state prisoner will have been convicted and had

3

his conviction affirmed. Such a result runs contrary to the presumption of release from custody articulated by Federal Rule of Appellate Procedure 23(c) and *Hilton*."). In fact, the Ninth Circuit has recently affirmed at least one district court grant of a habeas petition on insufficiency of the evidence grounds. *See Madriaga v. Kane*, 263 Fed. Appx. 563, 564 (9th Cir. 2008). Respondent has presented no case-specific reasons to indicate why a different outcome is likely in this case.

In fact, Ninth Circuit precedent on the legal questions raised in Mr. Fuentes' case demonstrates that reversal is far from likely. This case involves both gang expert testimony and aiding and abetting under California law, two issues which the Ninth Circuit has addressed in recent decisions granting habeas petitions. In *Briceno v. Scribner*, 555 F.3d 1069 (9th Cir. 2009), a post-AEDPA case, the Ninth Circuit held that the California Court of Appeal unreasonably applied *Jackson* when it concluded, on the basis of gang expert testimony, that there was sufficient evidence to support a criminal street gang enhancement. *Id.* at 1078-79. The Ninth Circuit held that the gang expert's testimony "did not establish Briceno's specific intent in committing the robberies, nor could it," because it "dealt almost exclusively in hypotheticals; [the gang expert] did not provide any direct or circumstantial evidence of Briceno and [the co-defendant's] own intent." *Id.*; *see also Garcia v. Carey*, 395 F.3d 1099, 1103 (9th Cir. 2005) (post-AEDPA case holding that gang expert's testimony that defendant's gang was "turf oriented" was insufficient to establish specific intent element of gang enhancement). Here, the prosecution relied heavily on gang expert testimony to establish Mr. Fuentes' knowledge of and specific intent to facilitate Mr. Reyes's plan to kill Francisco Ferreira: in response to a hypothetical, the gang expert testified that if a passenger in a car accompanied the driver to an area where the driver had previously been involved in a shooting, that "would tell me that [the passenger] also is on board with whatever is going to happen and has learned about what has happened in the past and is ready to take action for his fellow gang member." (4 RT 889.) This is precisely the type of opinion evidence that *Briceno* found insufficient to establish specific intent beyond a reasonable doubt.

4

1  The Ninth Circuit's recent case law on aiding and abetting convictions under California law further demonstrates why reversal is not likely. In *Juan H.*, the Ninth Circuit reversed the district court's denial of a habeas petition on sufficiency of the evidence grounds. 408 F.3d at 1274-79. Specifically, the Ninth Circuit held that the evidence was insufficient to sustain petitioner's juvenile delinquency petition for aiding and abetting first-degree murder and attempted murder in a gang-related shooting because none of the elements of aiding and abetting -- knowledge of the specific crimes the perpetrator planned to commit, specific intent, and acting to promote the commission of the crime -- had been proven beyond a reasonable doubt. *Id.* at 1266, 1278-79. In doing so, the Ninth Circuit emphasized that aiding-and-abetting convictions must be based on more than "speculation and conjecture," especially where there was no "direct evidence" of the petitioner's knowledge of the perpetrator's plan, and the petitioner merely stood, unarmed, behind the perpetrator during the shooting. *Id.* at 1278-79. The *Juan H.* court's conclusion comports with the Ninth Circuit's rejection of a similar "guilt by association" theory in another California aiding-and-abetting case, where it held that "[m]embership in a gang cannot serve as proof of intent, or of the facilitation, advice, aid, promotion, encouragement, or instigation needed to establish aiding and abetting." *Mitchell v. Prunty*, 107 F.3d 1337, 1342 (9th Cir. 1997), *overruled on other grounds by Santamaria v. Horsley*, 133 F.3d 1242, 1248 (9th Cir. 1998) (en banc).

Significantly, this Court concluded that the evidence in Mr. Fuentes' case was insufficient as to all three of the required elements for aiding and abetting under California law. Report and Recommendation, Docket No. 10, at 22. Therefore, even if the Ninth Circuit concludes that this Court erred in finding the evidence insufficient on one or two of these elements, this Court's decision will stand. Because Respondent has not shown that reversal is likely on any of the elements of aiding and abetting, he has failed to show a likelihood of success on the merits sufficient to warrant a stay.

//
//

5

1       B.     *Respondent Has Not Made a Sufficiently Strong Showing of Irreparable Injury.*

Respondent fails to satisfy the second *Hilton* factor because he has not shown more than a mere "possibility of irreparable injury" resulting from Mr. Fuentes' release. *Nken*, 129 S. Ct. at 1761 (holding that simply showing some "possibility" of irreparable injury is insufficient). In habeas cases, irreparable injury includes the possibility of flight, the risk of danger to the public, and the State's interest in continuing custody and rehabilitation pending appeal. *Hilton*, 481 U.S. at 777, 779.

Respondent's argument that denial of a stay will effectively deprive the State of its appellate rights, *see* Request for Stay Pending Appeal, Docket No. 16, at 3, is meritless. The denial of a stay after the grant of a habeas petition, and a petitioner's subsequent release pending appeal, does not make the underlying appeal moot. In *Calderon v. Moore*, 518 U.S. 149, 116 S. Ct. 2066, 135 L. Ed. 2d 453 (1996) (per curiam), the Supreme Court held that the denials of stays by the district court, Ninth Circuit, and the Circuit Justice for the Ninth Circuit, and the State's resulting setting of a retrial date for the petitioner, did not render the State's appeal moot because "a decision in the State's favor" would provide the State with relief by "releas[ing] it from the burden of the new trial." *Id.* at 150. Here, a decision in the State's favor in the Ninth Circuit would grant the State the remedy of returning Mr. Fuentes to custody to serve the remainder of his sentence. The State will be able to pursue its appellate rights in the Ninth Circuit regardless of Mr. Fuentes' release pending appeal.

Respondent's conclusory assertion that Mr. Fuentes is a flight risk is not supported by the record. Mr. Fuentes was born and raised in San Bernardino County. *See* Ex. A, Decl. of Tonja Anderson-Vargas at ¶ 2. Arrested for the instant conviction at age 17, Mr. Fuentes does not have a passport or driver's license, has never been out of the country, and does not even know how to drive. *See* Ex. A, Decl. of Tonja Anderson-Vargas at ¶¶ 2-4. His entire immediate family -- including his mother, father, four siblings, and five-year-old son -- lives in San Bernardino County. *See* Ex. A, Decl. of Tonja Anderson-

Vargas at ¶ 5. Mr. Fuentes' mother, Tonja Anderson-Vargas, is willing to have him reside in her home in Colton, California, if he is released pending appeal. *See* Ex. A, Decl. of Tonja Anderson-Vargas at ¶ 6. In light of Mr. Fuentes' strong family ties to Southern California, and his lack of ties to any other location, there is no reason to believe that he is a flight risk.

Mr. Fuentes' incentive to flee is particularly low given the nature of the habeas grant in this case. Because the grant of habeas relief was based on insufficiency of the evidence, the State of California is double-jeopardy barred from reprosecuting Mr. Fuentes. *Bean v. Calderon*, 163 F.3d 1073, 1086 (9th Cir. 1998). In other words, if Mr. Fuentes prevails on appeal, he does not face the prospect of a new trial, unlike many other successful habeas petitioners.

The circumstances underlying Mr. Fuentes' conviction -- a conviction that this Court has found was based on constitutionally insufficient evidence-- do not indicate that he is a danger to the community. The evidence presented at trial demonstrates that, at most, Mr. Fuentes leaned back in the passenger seat of a car while Melecio Reyes, the driver, reached across him to shoot Francisco Ferreira. *See* Report and Recommendation, Docket No.10, at 22. Although Mr. Fuentes was convicted of first-degree murder with gang and firearm enhancements, the serious nature of his conviction does not preclude release pending appeal. In fact, the Ninth Circuit has denied a stay of a release order pending appeal in the case of a habeas petitioner who was "convicted of two cold-blooded murders," identified as the perpetrator of yet another robbery-murder, and sentenced to death. *See Moore v. Calderon*, 56 F.3d 39, 40 (9th Cir. 1995); *id.* at 41 (O'Scannlain, J., dissenting). The Ninth Circuit concluded in *Moore* that "even when the public's and the state's interests weigh against release," a stay must be denied unless the applicant can "demonstrate a substantial case on the merits." *Id.* at 40 n.1. Where, as here, the State has raised virtually no substantive, case-specific arguments to show why reversal is likely, it cannot overcome the presumption in favor of release. *See*

//

*Hilton*, 481 U.S. at 477 (noting that "the traditional stay factors contemplate individualized judgements in each case).

Although the State has an interest in continuing custody and rehabilitation, that interest is significantly outweighed by the constitutional concerns raised by Mr. Fuentes' conviction. Further, this interest would not be irreparably injured by Mr. Fuentes' release pending appeal because, if the decision is reversed by the Ninth Circuit, Mr. Fuentes will be returned to state prison to serve the remainder of his sentence.

Finally, if the Court is concerned about the possibility of flight and dangerousness, it can exercise its discretion to order such controlling conditions as home confinement, electronic monitoring, intensive supervision by Pretrial Services, and appropriate travel restrictions. *See, e.g.*, *Sanders v. Ratelle*, 21 F.3d 1446, 1448, 1461-62 (9th Cir. 1994) (reversing denial of habeas petition and ordering release of petitioner, a California state prisoner convicted of second-degree murder and illegal use of a firearm, "subject to any reasonable requirements designed to ensure his appearance at possible future proceedings . . . as the district court sees fit to impose").

    C.    *Mr. Fuentes Will Suffer Substantial Injury by Remaining Incarcerated During the Pendency of Appellate Proceedings.*

The Supreme Court has recognized that "[t]he interest of the habeas petitioner in release pending appeal" is "always substantial." *Hilton*, 481 U.S. at 777. A protracted appellate process would compound the injury to Mr. Fuentes. *See Franklin*, 891 F. Supp. at 521 (holding that "there is every reason to believe that denying Franklin release pending appeal *will* substantially injure him," where petitioner had already been imprisoned for four years due to unconstitutional conviction, "[t]he State has not sought an expedited appeal, and a long delay in the appellate process would weigh in favor of release"). In 2006, the most recent year for which statistics are available, the median time from filing of a notice of appeal to disposition in the Ninth Circuit was 15.9 months. *See* U.S. Court of Appeals - Judicial Caseload Profile 2, *available at* http://www.ce9.uscourts.gov/statistics/appeals_court.pdf (last visited Jan. 5, 2010). The

1 notice of appeal in this case was filed on November 3, 2009, approximately two months
2 ago (Docket No. 17), and Respondent has not moved to expedite the appeal. Therefore,
3 if the Court stays its release order pending appeal, Mr. Fuentes may well serve an
4 additional 14 months or more in state prison -- beyond the six-and-a-half years he has
5 already served[1] -- on a conviction that this Court has found to be unconstitutional. D .

*Public Interest Considerations Do Not Support a Stay.*

7 The public interest factor merges with the "harm to the opposing party" factor
8 when the Government is the opposing party. *Nken*, 129 S. Ct. at 1762. As discussed
9 above, Respondent cannot show more than a mere possibility of irreparable injury if Mr.
10 Fuentes is released. And Respondent's fear that California will be unable to "vindicate
11 its rights in federal court," Request for Stay Pending Appeal, Docket No. 10, at 3, is
12 unfounded. The State of California will be able to present its appeal to the Ninth Circuit
13 with or without a stay of this Court's judgment. In any event, the public has an equal, if
14 not stronger, interest in ensuring that criminal convictions are supported by sufficient
15 evidence. *See In re Winship*, 397 U.S. 358, 372 (1970) (Harlan, J., concurring) ("I view
16 the requirement of proof beyond a reasonable doubt in a criminal case as bottomed on a
17 fundamental value determination of our society that it is far worse to convict an innocent
18 man than to let a guilty man go free.").

**Conclusion**

20 For the foregoing reasons, Petitioner respectfully requests that this Court deny
21 Respondent's request for a stay pending appeal.

                        Respectfully submitted,

                        SEAN K. KENNEDY
                        Federal Public Defender

DATED: January 8, 2010        By          /s/
                                         GIA KIM
                                         Deputy Federal Public Defender

---

[1] Mr. Fuentes has been in custody on the instant charge and conviction since at least June 27, 2003. (CT 10.)

9

# EXHIBIT A

# DECLARATION OF TONJA ANDERSON-VARGAS

I, Tonja Anderson-Vargas, hereby state and declare as follows:

1. I am the mother of James Fuentes, the petitioner in this case.

2. James was born in Redlands, California, and, until the time of his arrest at age 17 for this offense, lived his whole life in San Bernardino County -- in the cities of Redlands, Colton, and San Bernardino.

3. James does not have a passport and has never traveled outside of the United States.

4. James does not have a driver's license and does not know how to drive.

5. James's entire immediate family lives in San Bernardino County. James's father, Jesse Fuentes, Jr., lives in San Bernardino; his older sister, Laura Fuentes, lives in San Bernardino; his younger sister, Tonja Vargas, lives in Fontana; his younger sister, Veronica Vargas, lives in Fontana; and his younger brother, Jacob Chavez, lives in Colton with me.

6. If James is released from custody during the appeal, he is welcome to live with me at my home at 1666 Bordwell Avenue, Colton, CA 92324.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED: January 8, 2010

TONJA ANDERSON-VARGAS

1